# United States Bankruptcy Court, Northern District of Illinois

| Name of Assigned Judge | Manuel Barbosa | CASE NO. | 07-B-73065 |
|---|---|---|---|
| DATE | October 23, 2009 | ADVERSARY NO. | 09-A-96177 |
| CASE TITLE | In re Alberto Carmona-Huerta and Della F. Carmona-Huerta, Debtors<br><br>Alberto Carmona-Huerta and Della F. Carmona-Huerta, Plaintiffs<br>v.<br><br>John Zajicek, d/b/a Z Financial, Defendant. | | |

**DOCKET ENTRY TEXT**

For the reasons set forth below, the Defendant's motion for summary judgment is GRANTED, and the Plaintiffs' motion for summary judgment is DENIED.

■[ For further details see text below.]

This matter comes before the Court on the cross motions for summary judgment filed by the Plaintiff/Debtors ("Debtors") and by the Defendant, pursuant to Fed. R. Civ. P. 56 made applicable by Fed. R. Bankr. P. 7056. For the reasons set forth herein, the Court grants the Defendant's motion for summary judgment.

**Factual Background**

The general relevant facts are not contested. The Debtors failed to pay their real estate taxes on their property at 1008 Irving Avenue, Rockford, IL, for 2005 and 2006. The predecessor in interest to the Defendant paid $1,623.12 in respect of the Debtors' 2006 taxes at an annual tax sale by the Winnebago County Collector on October 23, 2009. The Defendant paid an additional $1,544.05 in respect of the 2006 taxes, to protect its interest in the property, on September 26, 2007. The Debtors filed a petition for protection under Chapter 13 of the Bankruptcy Code with this Court on December 17, 2007. On or about May 8, 2009, without seeking the permission of this Court, the Defendant filed a petition for tax deed with the state court, and procured publication of a notice of expiration of redemption period, procured the sheriff's service of notice, and posted the costs for such petition and notices to the county clerk's tax sale books. The additional posted costs increased the necessary redemption amount for the property by $791.71.

The Debtors complain that the Defendant's post-petition filing of a petition for tax deed and related actions in the state court, including the posting of additional costs, were an attempt to obtain possession and enforce a lien against property in violation of the stay under 11 U.S.C. § 362.

**The Illinois Property Tax Code**

Under the Illinois Property Tax Code, if a judgment is rendered against any property for unpaid taxes, the county collector can sell the property at a tax sale. 35 Ill. Comp. Stat. 200/21-190 (2009). The county collector sells the property by means of a special form of auction. Potential buyers offer to pay the delinquent taxes and costs on the day of the tax sale, but bid by bidding on the lowest amount of penalty premium above that tax amount (expressed as a penalty percentage of the amount of taxes paid by the purchaser, which accrues every 6 months) that they will accept to redeem the property within the statutorily provided redemption period. 35 Ill. Comp. Stat. 200/21-215 (2009). The winning bidder pays the outstanding taxes on the property and

receives a certificate of purchase. The original property owner has two years, which can be extended to 3 years by the purchaser, to redeem the property. 35 Ill. Comp. Stat. 200/21-345, 385 (2009). The property owner can redeem the property within the redemption period by paying (1) the unpaid taxes plus the penalty percentage, (2) any subsequent taxes paid by the purchaser plus 12% interest per annum, and (3) various statutorily-allowed costs and fees. 35 Ill. Comp. Stat. 200/21-355 (2009). If the property owner fails to redeem the property by the end of the redemption period, the purchaser can obtain a tax deed for the property, so long as the purchaser complies with certain notice requirements, including sending a notice of sale and redemption rights within 4 months and 15 days after the tax sale, sending and serving notice of the expiration of the redemption period between 3 and 6 months prior to the expiration of the redemption period, and filing a petition for deed between 3 and 6 months prior to the expiration of the redemption period. 35 Ill. Comp. Stat. 200/22-5 to 30 (2009). If the purchaser fails to take out and record a tax deed within one year after the expiration of the redemption period, the deed is void; however, the one-year period is tolled to the extent "the holder of the certificate is prevented from obtaining a deed by injunction or order of any court, or by the refusal or inability of any court to act upon the application for a tax deed, or by the refusal of the clerk to execute the same deed." 35 Ill. Comp. Stat. 200/22-85 (2009). Therefore, under this provision the existence of the bankruptcy stay should toll the one-year period to obtain and record the tax deed. See In re Bates, 270 B.R. 455, 468-69 (Bankr. N.D. Ill. 2001). However, there is no similar provision to toll the 3-month window in which to file a petition and serve notices prior to the expiration of the redemption period. If, after the owner files for bankruptcy, the tax-sale purchasers do not want to take their chances on receiving the redemption amount or the property, the Illinois Property Tax Code also includes a provision whereby, if the property owner files for protection under the Bankruptcy Code after a tax sale but before the issuance of a tax deed, the purchaser may request a court to declare the sale to have been a "sale in error," and to provide for the refund from the state of the purchase price and other taxes paid, together with certain costs and interest. 35 Ill. Comp. Stat. 200/21-310 to 320 (2009).

**The Applicability of the Bankruptcy Stay to Actions Taken Under the Property Tax Code**

A preliminary question is, if the property was "sold" at the September 2007 tax sale, was it still property of the estate as of the petition date? The answer is yes. Case law holds that, although the Illinois Property Tax Code calls the annual tax sale a "sale," the proceedings and issuance of the certificate of purchase merely create "a lien for the amount of taxes paid at the tax sale plus penalties and interest" secured by the property. In re Giddens, 298 B.R. 329, 335 (Bankr. N.D. Ill. 2003) (citing In re Winters, 1995 WL 453053, at *4 - *5 (N.D. Ill. 1995)). The transfer of the full ownership interest in the property does not occur until the actual tax deed is issued or recorded, which only occurs if the owner fails to pay the redemption amount by the end of the redemption period and the purchaser properly and timely petitions for the tax deed.

Although 11 U.S.C. § 362(a) prohibits both the perfection of liens and the enforcement of liens post-petition, Section 362(b) creates an exception for actions to perfect or maintain the perfection of certain liens. Actions which do not demonstrate an effort to exercise control over the property and that do not result directly in the issuance of a deed, but rather are only steps needed to preserve the tax purchaser's right to seek a deed, are more in the nature of perfection of an interest than enforcement, and "fall within the 'perfection' exception to the automatic stay." In re Bates, 270 B.R. at 469. Therefore, "the acts required of the tax-sale purchaser in order to preserve its in rem claim against the delinquent real property are excepted from the stay by § 362(b)(3)." Giddens, 298 B.R. at 336. The excepted acts would include the acts which must be completed within the 3 to 6 month window prior to the expiration of the redemption period, including "filing the tax-deed petition and sending the notices of the redemption-period," but would not include further actions of enforcement, such as the filing of an application for an order issuing the tax deed, a hearing on the application, or the actual issuance of a tax deed. Id. Therefore, the Defendant did not violate the stay by filing its petition for tax deed in the state court or by complying with the notice requirements of the Illinois Property Tax Code.

The Debtors also argue that the Defendant violated the stay because he did more than merely preserve his rights under the state statute. The filing of the petition and notices resulted in additional costs, which the state statute provides for reimbursement of by increasing the amount needed to redeem the property. While it is true that the reimbursement amount provided for by the state statute may have increased, that does not mean that the Defendant has violated the stay. As noted above, the Defendant's right to receive the redemption amount (to the extent that the Debtors choose to redeem the property) is a secured claim. As such, 11 U.S.C. § 506(b) allows for post-petition fees, costs or charges provided for under the agreement or State statute under which the claim arose, but only to the extent allowed by such section.[1] If the Defendant actually received payment from the Debtor of the additional costs without leave of the Court, it would be a violation of the stay, just as it would be a violation of the stay if the Defendant received any other portion of the redemption amount. However, all that has happened is that the amount the Defendant would otherwise be able to receive under the state statute outside the context of a bankruptcy has increased. He has not yet been reimbursed, and his actual right to payment is still limited by the Bankruptcy Code, including Section 506(b), and therefore he has not yet violated the stay.

**Conclusion**

For the foregoing reasons, the Court grants the Defendant's motion for summary judgment and denies the Debtors' motion for summary judgment. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

---

[1] Section 506(b) only allows post-petition costs and expenses to be added to a secured claim to the extent they are "reasonable" and only to the extent that the creditor is oversecured. The Court makes no determination at this point as to whether the Defendant is oversecured or whether the post-petition costs are reasonable.